## JACOB MOSCHELL ET AL. v. THE STATE.

1. An indictment under section 191 of the Crimes act as amended (*Rev. Sup., p.* 199, § 43) charged defendants with conspiring to pervert and obstruct the administration of the election laws by doing certain acts with intent to unlawfully influence the result of a certain election. *Held*, that a crime under the provisions of that section was sufficiently shown.

2. When a jury has been struck for the trial of an indictment against two or more defendants for a crime not within section 71 of the Criminal Procedure act permitting twenty peremptory challenges, the defendants collectively, and not separately, are entitled to only three peremptory challenges. The act of April 4th, 1878 (*Pamph. L., p.* 284), does not apply to struck juries.

3. A struck juror is not a petit juror within the meaning of that clause of section 6 of the Jury act which makes service as a petit juror within three previous stated terms of the court a ground of challenge.

4. A principal challenge was interposed, and the sole cause alleged for the challenge was that, from what he had read, the juror had formed an opinion of the guilt or innocence of the accused. *Held*, in accord with the doctrines of *State* v. *Fox*, 1 *Dutcher* 566, (1) that neither the formation nor the expression of an opinion of the guilt of the accused will be sufficient to disqualify; (2) while an expression of such an opinion showing malice or ill-will toward accused will disqualify, and be ground of principal challenge; yet (3) such expression of opinion will not, of itself, establish such malice or ill-will. Therefore, upon a demurrer or motion to overrule, such a challenge ought to have been overruled.

5. If, upon such a challenge, the court below proceed without objection to try it and then overrule it, a court of review must assume that no malice or other ground of principal challenge was found, and the determination presenting no legal error, will not be reviewed.

6. If such a challenge be considered as one to the favor; *Held further*, (1) that upon the trial of such a challenge the indifference of the juror

will be presumed until overcome by legal proof; (2) while the challenged juror may be called and examined as to the expression or even the formation of an opinion as to the guilt of the accused; yet (3) that neither the formation nor the expression of such an opinion will, of itself, be sufficient to establish bias against the accused.

7. Upon a review of such a challenge to the favor, errors of law, such as the improper admission or rejection of evidence, misapplication of legal principles and the like, can alone be considered.

On error to the Hudson Quarter Sessions.

Argued at February Term, 1891, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, MAGIE and GARRISON.

For the plaintiffs in error, *Abram Q. Garretson.*

For the state, *Charles H. Winfield* and *John P. Stockton, Attorney General.*

The opinion of the court was delivered by

MAGIE, J. This writ of error brings up the record of the conviction of the plaintiffs in error upon an indictment in the Hudson Sessions.

In behalf of plaintiffs in error it is first contended, that the indictment does not charge them with any crime known to our law, and thus is insufficient to sustain the conviction.

This objection, being directed to what is apparent on the face of the indictment, must have been taken by demurrer or by motion to quash before a jury was sworn, to be available under the provisions of section 53 of the Criminal Procedure act. *Rev., p.* 277; *State* v. *Gedicke,* 14 *Vroom* 86; *Noyes* v. *State,* 12 *Id.* 418.

The record discloses no demurrer. A bill of exceptions shows that a motion to quash was made and denied, and an exception to that ruling was allowed.

There is no assignment of errors directed to the insufficiency of the indictment. The only assignment on the subject is directed to the denial of the motion to quash.

But a motion to quash is directed to the discretion of the
court. *State* v. *Hageman*, 1 *Gr.* 314; *State* v. *Dayton*,
3 *Zab.* 49. It is a proposition universally admitted, says
Chancellor Kent, that error will not lie on matters resting in
discretion. *Clason* v. *Shotwell*, 12 *Johns.* 49. See, also, *Evans*
v. *Adams*, 3 *Gr.* 373; *Wright* v. *Green*, 6 *Halst.* 335;
*Den d. Rutherford* v. *Fen*, 1 *Zab.* 700; *Commonwealth* v.
*Eastman*, 1 *Cush.* 189; *Commonwealth* v. *Wood*, 4 *Gray* 13,
and *Commonwealth* v. *Ryan*, 9 *Id.* 137.

Unless the provisions of section 53 of the Criminal Pro-
cedure act have altered the force of a motion to quash on such
a ground, the assignment of errors does not seem to present
the question of the sufficiency of the indictment. Whether
under that section such a motion is not addressed rather to
the judgment than the discretion of the court, so that error
may be assigned on the ruling made thereon, was not fully
argued.

For this reason no opinion will be expressed, but it will be
assumed that the sufficiency of the indictment is presented by
the assignment of errors for decision.

The indictment was drawn under section 191 of the Crimes
act as amended by an act of March 28th, 1882. *Rev. Sup.*, p.
199, § 43. The pertinent part of this section reads thus:
"If any two or more persons shall * * * conspire
* * * to commit any act for the perversion or obstruc-
tion of justice or the due administration of the laws, they
shall, on conviction, be deemed to be guilty of a con-
spiracy," &c.

Stripped of redundancy, the indictment charges that plaint-
iffs in error, being and acting as officers of election at an
election in Hudson county, conspired to pervert and obstruct
the due administration of the laws regulating elections, by
putting in the ballot box two hundred votes not cast by per-
sons entitled to vote, and by estimating and counting said
votes, with intent to corruptly and unlawfully influence the
result of the election. The indictment further charges the

doing of other acts in pursuance of the conspiracy and to further its object.

The contention now under consideration is first put on the ground that the phrase, " due administration of the laws," in this legislation does not apply to the election laws.

To administer laws is either to superintend their execution or to determine their application. Without laying stress upon the judicial or *quasi* judicial functions of election officers, I think it plain that their acts under those laws are acts of administration in both senses. Whatever perverts or turns from its true end and purpose the administration of those laws is therefore within the provisions of this section.

The next insistment under this point is, that the indictment does not charge a conspiracy to commit any act for the perversion or obstruction of the due administration of those laws.

Indictments for statutory crimes may charge the offence in the words of the statute, or may charge such facts as bring the accused within its operation.

The charge that the accused in this case conspired to pervert the administration of the election laws by doing specified acts, cannot, in my judgment, be distinguished from a charge that they conspired to do those specified acts for the perversion of those laws. The charges are substantially equivalent.

Under a statute of Illinois which made criminal a conspiracy with fraudulent intent to do any illegal act injurious to the administration of public justice, an indictment charging an unlawful conspiracy with fraudulent intent to influence the administration of public justice by unlawfully attempting to obtain a decree of divorce, was held to sufficiently charge the statutory crime. *Cole* v. *People,* 84 *Ill.* 216.

The indictment is not open to these objections.

The next objection is to the refusal of the court below to allow certain peremptory challenges, interposed by plaintiffs in error, or some of them, to jurors when called.

A jury had been struck, pursuant to the provisions of section 18 of the Jury act. *Rev., p.* 527. When the jury for the trial of the indictment was being empaneled, the court

below limited the peremptory challenges of all the plaintiffs in error to three. When some of the plaintiffs in error interposed additional challenges they were overruled and exception was taken.

In support of this exception, it is first insisted that each of the accused was entitled to challenge peremptorily at least three of the jurors.

The propriety of this insistment must depend on the construction of section 42 of the Jury act (*Rev.*, *p.* 531), which declares, that upon the trial of any civil cause or indictment, for which a struck jury shall be summoned and returned, three peremptory challenges shall be allowed as in other cases.

The privilege of peremptorily challenging jurors in other cases differs, as to number, in respect to the grade of crime charged.

By section 71 of the Criminal Procedure act (*Rev.*, *p.* 280), it is enacted that every person indicted for certain crimes, all of which are of a high grade, shall be permitted to challenge peremptorily twenty of the jury and no more. But by a proviso, this privilege does not apply in case a jury is struck.

By section 40 of the Jury act (*Rev.*, *p.* 530), it is enacted that upon the trial of any indictment where twenty peremptory challenges are not allowed, the defendant or defendants shall be entitled to challenge peremptorily three of the general panel of jurors.

The Criminal Procedure act and the Jury act were enacted on the same day as parts of the Revision of 1874. Their provisions as to empaneling juries in criminal cases are *in pari materia*. Construed together, they enact that twenty peremptory challenges shall not be allowed when a jury is struck for the trial of any of the crimes enumerated in section 71 of the Criminal Procedure act; that in respect to any struck jury in any criminal case three peremptory challenges only are to be allowed, and that these challenges are to be allowed " as in other cases."

Comparing the language of section 71 of the Criminal Procedure act and section 40 of the Jury act, a plain distinction appears to be made. By the former section, peremptory challenges are given to every person indicted for certain crimes. This has been construed at the Oyer, in several instances, to permit the prescribed number of peremptory challenges to be made by each defendant. That construction accords with the provisions of the common law as altered by 22 *Hen. VIII., c.* 14, § 7; 2 *Hale.P. C.* 268; *Bac. Abr., tit. "Juries,"* G. By the other section the privilege of peremptory challenge is given, not to every person indicted, but to the defendant or defendants. With respect, therefore, to the minor crimes, the privilege is not accorded to each defendant, but to all of them, if more than one. This construction has also been given in the Oyer, and plainly ought to be approved.

Since, therefore, the crime charged in this indictment is not within the provisions of section 71 of the Criminal Procedure act, the court below rightly held that the plaintiffs in error were collectively, and not severally, entitled to peremptorily challenge the number prescribed by law.

But it is further contended, that the court below erred in restricting all the accused to three peremptory challenges. The claim is that they were entitled to six.

This claim is put upon the provisions of the act approved April 4th, 1878. *Pamph. L., p.* 284. The first section enacts that "upon the trial of any indictment where twenty peremptory challenges are not allowed, the defendant or defendants shall be entitled to challenge peremptorily, at any time before the jury is sworn; six of the general panel of jurors summoned and returned by the sheriff or other officer."

The contention is that, assuming the correctness of the construction heretofore asserted, the defendants were by this act entitled to collectively challenge six jurors peremptorily.

No contest has been made over the validity of this act, although its peculiar title may render its validity highly questionable.

Assuming its validity, there are two reasons for concluding that the claim now insisted on cannot be yielded to.

The provision for peremptory challenges in case of struck juries in criminal trials was first adopted by a supplement to the "Act relative to juries and verdicts," which was approved April 6th, 1871. *Pamph. L., p.* 111. It provided that in such cases the same peremptory challenges should be allowed as in other cases. When brought into the Revision this clause was so altered as to limit peremptory challenges in all cases to three in number, and thereby the legislative intent was clearly manifested that the number of such challenges should not depend on the provisions of other laws.

The challenges given by the act of 1878 are, moreover, declared to be applicable to the general panel of jurors. This renders it obvious that the right to peremptorily challenge six jurors is to be exercised when the trial is conducted with a jury drawn from the general panel. It does not apply when the trial is to be conducted with a jury previously selected or struck.

It is next objected that the court below erred in overruling challenges interposed to certain jurors for cause, wherein it was made to appear that the jurors challenged had, at one of the three stated terms of the courts of Hudson county next preceding that at which plaintiffs in error were put upon trial, served as jurors upon other struck juries.

It is insisted that this is ground of principal challenge under the provisions of section 6 of the Jury act, as amended by the act of April 21st, 1876. *Rev., p.* 532. It is thereby enacted that if any person shall be summoned as a petit juror at any stated term of any court, who has served as such at any of the three stated terms next preceding that to which he may be summoned, it shall be good ground of challenge to any such juror, who shall be discharged upon any such challenge being verified.

If this challenge had fully set out its cause, the state might have demurred. If the demurrer had been sustained the matter would have appeared on the record, and error might

have been assigned thereon. 10 *Went. Pl.* 474; *Lil. Mod. Entr.* 345. If, upon debate, though without demurrer, the court overruled the challenge, an exception was proper. *Bac. Abr., tit. "Juries," F,* 12. Whether, when the court proceed without debate to take testimony and adjudicate thereon, an exception can be taken, admits of doubt.

Assuming the exception taken opens the matter to review, it is apparent that the ruling complained of was not erroneous unless a juror summoned and serving on a struck jury is a petit juror within the meaning of the Jury act.

The division of juries into grand and petit has been recognized from the earliest times. Petit juries, in general, are those which were selected to try issues, civil and criminal, under the direction of the ordinary process of the courts. The issuing of such process has long fallen into disuse, and under statutory regulations juries for such trials are selected by lot from a general panel of jurors, selected and summoned by the sheriff for service at each stated term of the court. But courts have for a long period of time, upon extraordinary reasons, made orders for a special jury in a particular case. *Bac. Abr., tit. "Juries," D.* This ancient practice is now regulated by our Jury act. Jurors thus ordered are not selected by the sheriff, but by the court or a judge. They are summoned, not for general service during a stated term, but for special service in a single case. Such jurors are not ordinarily called petit jurors, and that term is applied to the jurors composing the general panel, selected and summoned to serve at stated terms in any cause in which no special jury has been ordered.

The application of the rule of the statute excluding jurors who had previously served within a fixed period can readily be made by the sheriff in selecting the general panel, while the judge, in selecting names from which a special jury is to be struck, has nothing before him to indicate who are disabled by this provision of the Jury act. It could not have been intended to require him to examine the previous jury lists.

For these reasons, I conclude that the enactment in question does not apply to those jurors who are not of the general

panel, but are summoned under a special order of the court as special or struck jurors.

This objection cannot prevail.

It is next argued that there was error in overruling challenges interposed by plaintiffs in error to Coles, Sierck and Throckmorton, three jurors called and afterwards sworn on the jury.

The bills of exception show that, as each of these jurors was called, the plaintiffs in error interposed the "same challenges as heretofore."

To understand this, we are obliged to recur to the first challenge, for it does not elsewhere appear of what nature· the challenges were.

It thereby appears that the first juror was challenged for principal cause upon two grounds, viz., (1) because of previous service as a juror, and (2) because "he has, from what he has read, come to a conclusion as to the guilt or innocence of the defendants."

As to the three jurors above named, there was nothing to show that either had previously served as a juror within the limited period. It is obvious that each challenge to them was a principal challenge, *propter affectum,* and the sole cause specified was the formation of an opinion as to the guilt or innocence of the accused from what the juror had read.

These challenges were designed to present to the court below questions which have much vexed the courts of other states, and the rulings upon which have furnished grounds for complaints of the administration of justice. Under a practice introduced by such rulings, juries for the trial of persons accused of crimes which have acquired notoriety and been the subject of discussion in the community, and of description and observation in the newpapers, have been obtained with difficulty, after vexatious and unseemly delays, and frequently, perhaps necessarily, from those of less than the average intelligence and capacity among persons liable to jury duty. The evils resulting have seemed so grievous that in some states resort has been had to legislation for a cure.

In 1856 there was a deliverance of this court upon the subject of such challenges. The practice has since conformed to the principles then laid down, and has proved eminently satisfactory. Under this practice there never has been difficulty in empaneling within a reasonable time a jury of at least the average intelligence and capacity. During the whole period since there has never been any reason to suppose that any accused person has suffered in the least degree from the partiality or unfairness of a jury empaneled under the rules laid down in State *v.* Fox.

From my observations in the Oyer, and in the review of criminal cases, I am led to believe that there is a growing tendency to press upon our criminal courts a variant practice. I do not mean to intimate that the courts have yielded to this pressure. But the fact that such pressure seems to be applied in every criminal case of importance, renders it proper to renew the deliverance of this court on the subject. It is important to take bearings from time to time that we may not insensibly drift from a correct position.

It was no doubt at one time supposed that the expression or even the formation of an opinion by a juror as to the guilt of the accused disqualified the juror, and was ground of principal challenge.

The early practice in this state was upon this theory up to the time when Chief Justice Hornblower recalled the true rule, which he did by his opinion at the Oyer on the trial of Spencer. The opinion was published, and it is understood that the early practice was thereafter abandoned. *State* v. *Spencer,* 1 *Zab.* 196.

The same questions were afterwards brought to the attention of this court and passed upon in *State* v. *Fox,* 1 *Dutcher* 566. The unanimous opinion of the court was delivered by Chief Justice Green. The early practice, the propriety of which was urged in the argument, was pronounced to be unsupported either by reason or authority, and the doctrine of State *v.* Spencer was sustained and approved.

The questions were presented by two exceptions—one to the exclusion of a question proposed to be asked of a juror, challenged for principal cause, as to whether he had formed and expressed an opinion of the guilt of the prisoner, and the other to the exclusion of a similar question proposed to be asked of another juror challenged to the favor.

In State v. Spencer such a question had been held to be inadmissible, on the ground that an answer in the affirmative would tend to the disgrace of the juror. When State v. Fox was decided legislation had modified the common law rule respecting the examination of witnesses to matters tending to their disgrace. The question was not therefore rejected on that ground, but on the ground of immateriality, because, if answered affirmatively, the challenge would not have been established.

The following propositions were established by the decision of State v. Fox, viz., (1) that neither the formation nor the expression of an opinion of the guilt of the accused will be sufficient of itself to disqualify the juror; (2) that an expression of such an opinion, indicative of malice or ill-will toward accused, will disqualify the juror, and be ground of principal challenge, and (3) that the mere expression of such an opinion will not establish malice or ill-will under a principal challenge, nor bias or partiality under a challenge to the favor.

It has been claimed that the case also settled that evidence of the expression or formation of an opinion as to guilt was only admissible upon a principal challenge, and this is said to be the true deduction to be drawn from the language of the Chief Justice, on page 601 of the reported case, where he declares that his opinion is not to be regarded as sanctioning the right to challenge to the favor on the grounds there relied upon. Upon the preceding page the opinion had dealt with an exception taken under a challenge to the favor. A question whether the juror had formed or expressed an opinion as to guilt was held to have been properly excluded under that challenge, not because it was in itself inadmissible, but be-

cause an affirmative answer alone would not establish the challenge, and the record did not show that it had been proposed or intended to introduce other evidence. Under these circumstances, it is obvious that what was afterward said only meant that a challenge for the cause relied on, viz., the mere expression of opinion, was, if available, only available as a principal challenge.

A challenge *propter affectum* is "of two sorts, either working a principal challenge or to the favor. And, again, a principal challenge is of two sorts, either by judgment of law without any act of his (the juror) or by judgment of law upon his own act." *Co. Lit.*, 157a.

A challenge *propter affectum* concluding to the favor is, "where either party cannot take any principal challenge but sheweth causes of favor, which must be left to the consciences and discretion of the triors upon hearing their evidence to find him favorable or not favorable." *Co. Lit.*, 157b.

Upon that challenge the issue is whether the juror is, in a legal sense, indifferent between the parties.

Upon that issue, the indifferency of the juror is to be presumed, and must be overcome by evidence or the challenge will not be sustained. Evidence must be admitted and rejected according to the rules of evidence. The challenged juror may be sworn and required to testify. He may be examined as to bias, &c., in connection with other pertinent testimony tending to show bias; he may be asked whether he has formed or expressed any opinion as to the guilt of the accused. Neither the formation nor the expression of such an opinion will, of itself, be sufficient to establish bias, for it is consistent with entire legal indifference toward the accused.

On this subject the language of Chief Justice Green is so apposite that I can no better express my views than by quoting it in full: "The formation or expression of an opinion * * * is perfectly compatible with the indifference of the juror in the legal sense of the term. The very terms of the challenge *propter affectum* imply a moral bias, partiality or prejudice. A mind heated by passion, excited by controversy

or inflamed by party strife, labors under a moral bias. When this is proved to exist the challenge may be sustained. But knowledge is not prejudice. Wherever there is knowledge, from the very nature of the human mind, there must be opinion, and the strength of the opinion will ordinarily be proportioned to the extent of the knowledge. In a community like ours, where intelligence of every kind is widely diffused, rapidly circulated and eagerly sought after, to affirm that every one who acquires information of a crime, and forms, as every man capable of thought must form, some opinion in regard to it, is laboring under a moral bias which perverts the judgment, is to affirm what is contrary to all reason and experience, and in direct conflict with the truth. * * * There may be some minds so constituted that every ray of light necessarily produces obliquity of vision. But that is not the normal condition of the mind, and it cannot be wise to predicate a legal principle upon a mere anomaly."

Turning now to the case before us, we find that the challenges under consideration were interposed as principal challenges for the sole cause that the challenged jurors had, by reading, formed an opinion as to the guilt of the accused.

Had the state demurred or moved to overrule on the ground that the alleged cause, if true, was insufficient to sustain the challenge, the court below would have been bound to hold the demurrer good, or to grant the motion upon the authority of State v. Fox.

But plaintiffs in error were permitted to proceed and give evidence in support of these principal challenges. Questions were permitted to be asked of the challenged jurors, tending to show the formation and expression of opinion by them as to the guilt of accused. There was no evidence offered or proposed to be given tending to show an expression of such opinion indicative of malice. Upon the same authority these questions, if objected to, ought to have been overruled.

Upon consideration of the evidence offered on the issues made by these challenges, the court below determined that they were not sustained. We must assume that the court

found, as a fact, that no expression of opinion indicative of malice had been shown. We cannot review the decision on the question of fact. The evidence, however, clearly indicates that it was correct.

Upon such finding, it is perfectly obvious that the rulings against the challenges were unexceptionable.

The bills of exception seem to show that the challenges were treated in the Sessions rather as challenges to the favor than as principal challenges.

The argument here took the same direction. If we can so consider them, the rulings are still unexceptionable.

Although a challenge to the favor is no longer tried by triers, but by the court, the rules applicable to a review of any ruling thereon have not been altered. The court of review can only deal with legal errors, such as the improper admission or rejection of evidence, the misapplication of legal principles and the like. Adjudications as to the indifference of the juror, made upon facts legally proved, are adjudications of fact which cannot be reviewed. *Patterson* v. *State*, 19 *Vroom* 381.

Looking at these challenges as made to the favor, no legal error appears in the action of the court thereon.

Among the other assignments I have not discovered any that point to errors below or require discussion here.

The result is that the judgment must be affirmed.