THE STATE v. JAMES R. NUGENT ET AL.

Argued June 3, 1908—Decided November 9, 1908.

1. An indictment charging that defendants unlawfully combined, united, federated, conspired and bound themselves to do an unlawful act, charges a conspiracy without the use of the words "the defendants did agree '*together*.'"
2. Fraudulent voting at an election, whether consisting of voting disqualified persons, repeating, or voting under the names of other voters, is a perversion or obstruction of the due administration of law, which, by the Crimes act (*Pamph. L.* 1898, *p.* 805, § 37), as amended by the act of 1899 (*Pamph. L., p.* 214), is made the subject of a criminal conspiracy.
3. Aiding and abetting in the false registration of a person is a sufficient overt act in the execution of conspiracy to have such a person fraudulently vote at the following election.

On application for a writ of *certiorari* to bring into this court an indictment found by the Essex county grand jury against several defendants for conspiracy.

Before Justices REED, BERGEN and VOORHEES.

For the application, *Samuel Kalisch.*

For the state, *Louis Hood.*

The opinion of the court was delivered by

REED, J.    The indictment in question charges that the defendants did unlawfully and wickedly combine, unite, confederate, conspire and bind themselves by agreement to unlawfully and corruptly procure one W. B. to vote at a specified general election in the sixth election district of the second ward of the city of Newark, well knowing the said W. B. not to be a qualified voter in said election district at that election.

It is insisted that regardless of other objections to the indictment, the words employed are not apt to charge a crim-

inal conspiracy. The alleged defect pointed out is that the words "the defendants did bind themselves by an agreement" does not necessarily import that the agreement was between themselves, but leaves open the possibility that the agreement might have been between each defendant and some third person or persons.

There is no doubt that the forms in indictments for conspiracy contain the charge that the defendants did agree together, or that the defendants did among themselves conspire and agree together, but it seems impossible to ascribe to the other words, "combine, confederate, conspire" any meaning other than that the defendants mutually engaged to accomplish the purposes charged. When it is said that A and B confederated or conspired to do an act, the words seem to have a well defined significance. The etymological, technical and popular significance of these words when predicated of two or more persons is that they reciprocally engage to assist in a common enterprise, and the enterprise being common, and the will of all the defendants being common, the agreement is common and between each and all of the defendants. This is the equivalent for agreeing together to perform the act.

Besides, the charge is couched in the language of section 37 of the Crimes act as amended by the act of 1899. *Pamph. L., p.* 214. This section does not merely indicate the punishment for a crime known to common law, but defines the crime itself.

I therefore think the statement of conspiracy from the point of view in which it is attacked is sufficient.

It is again insisted that the indictment does not show that the defendants conspired to commit a crime in the county of Essex. Assuming that such a charge was essential under the statute, it nevertheless appears in the indictment. The general purpose of the conspiracy, as set out, was to procure disqualified persons to vote, and to procure qualified persons to vote in more than one election district, and to vote upon names other than their own upon a general election held in this state on a certain date, but the specific charge is that

they conspired to procure a certain person to vote in a certain election district in Essex county. This fixes the place where the purpose of the conspiracy was to be executed.

Conspirators may be indicted in the jurisdiction where the conspiracy was entered into (*Dealy* v. *United States,* 152 *U. S.* 539), and this indictment charges it to have been in the county of Essex. The rule is that conspirators may be indicted either in the county in which they first entered into the unlawful combination, or in any other county in which, in pursuance of it, an overt act was performed. 1 *Bish. Cr. L.,* § 61.

But it is said that it is not charged that the conspiracy was to commit a crime; that as the crime of conspiracy is limited by section 37 of the act concerning crimes, as that section was amended in 1899 (*Pamph. L., p.* 214), the only ground upon which this indictment can stand is that the purpose to be accomplished by the conspiracy is the commission of a crime, and it is insisted that while the purposes to be accomplished were crimes under section 2 of the act of 1905 (*Pamph. L., p.* 224), yet that section has been repealed by a later act passed in 1905 (*Pamph. L., p.* 386), the thirty-fifth section of which later act, it is insisted, provides for the sole punishment of acts, which under the previous acts were crimes, the punishment being a penalty to be recovered in a civil action.

It is to be observed that the legislation contained in section 35 of the later act seems to be entirely aside from the purpose indicated in the title of the act. The purchase of voting machines and the regulation of the use of voting machines can hardly be said to express a purpose to legislate for the punishment of illegal voting, which punishment has always been provided for in the Crimes act, or in the act to regulate elections.

But the question of repealer is unimportant. It is unimportant because the assumption that the indictment is valid only if it charges a design to commit a crime is untenable. Assuming for the purpose of defendants' argument that section 37 of the Crimes act as amended in 1899, page

214, covers the whole field of criminal conspiracy; that this section, notwithstanding *State* v. *Norton,* 3 *Zab.* 33, excludes any matter as the subject for a criminal conspiracy save those pointed out in the statute, yet the matters included within this statute are not confined to a combination to commit a crime. One of the purposes, a combination to effect which is a conspiracy is, in the language of this section, "a design to commit an act for the perversion or obstruction of justice, or the due administration of the laws."

Now the fraudulent voting at an election, whether in the shape of voting disqualified persons, repeating, or voting upon the names of other voters, is a perversion or obstruction of the due administration of law. It is as palpably so as was the tampering with ballot boxes, dealt with in the case of *State* v. *Moschell,* 24 *Vroom* 498; affirmed, 25 *Id.* 390. In that case an indictment for conspiracy was sustained upon these grounds. Therefore, it would not matter whether these acts of fraudulent voting were criminal or penal acts, or neither criminal nor penal, they were in any respect perversive of the due administration of the law. It is true that the instrument does not charge that the defendants conspired to commit an act for the perversion or obstruction of justice, or the due administration of the law. But it does charge specific facts which bring the defendants within the ban of the statutory language, and charges those facts so as to inform them with absolute certainty of the character and nature of the specific charges, and this was all that was requisite. *State* v. *Thatcher,* 6 *Vroom* 445; *State* v. *Startup,* 10 *Id.* 423.

Again, it is insisted that no overt act is properly pleaded. The overt acts pleaded are that the defendants in pursuance of their conspiracy, aided and abetted the disqualified persons, whom they had conspired to have vote, to falsely register their names, or the names of others, on a certain registry list, as persons qualified to vote.

It is first said that there is no charge that such persons voted or offered to vote, and secondly said that there is a distinct statutory provision for punishing a person who shall

counsel the registration of any name of any person knowing him not to be entitled to a vote, and that there is also a distinct provision for punishing anyone who shall counsel a person to vote on election day.

In the first place, the act which the defendants conspired to effect need not be accomplished. If there was a design to procure a disqualified person to vote, followed by an overt act in pursuance of that design, the conspiracy was complete, although for some reason its purpose failed and the person did not actually vote.

Secondly, the fact that there is a provision for punishing the counseling to false registration, or counseling to false voting, in no way impairs the charge of a conspiracy to procure a disqualified person to vote, and the charge of procuring such person to register, as an overt act. Indeed, it may be observed that counseling by a single person is quite distinct from the combined counseling of several persons.

It is the power and consequently the danger that springs from the union of influence of many minds and wills to bring about the result that constitutes the criminality of a conspiracy.

Respecting the essential act in execution of the joint design required by the statute, we think that the registration is such a step in the assertion of the right to vote, and in the equipment of the person asserting the right, with the privilege of voting, that where there is a design to vote fraudulently, then a fraudulent registration is an act taken in the execution of that purpose.

It follows that the aiding and abetting in the false registration of W. B. was an overt act in carrying into execution the design to procure W. B. to vote at the following election.

It is again objected that an election district is not a political division of the state of which the court will take judicial notice; that therefore the charge of a design to procure a person to vote in a certain numbered election district in a certain ward in a city, is insufficient for want of certainty.

Whether the court will take judicial notice of the location

of an election district, is one of evidence and not of pleading, and we think that a description of the election district by number and ward was sufficiently certain without setting out the boundaries of the district.

It is again insisted that the indictment is multifarious, in that it charges a design having a multitude of objects to be accomplished. But this objection is answered by the opinion of Chief Justice Beasley in *Noyes* v. *State,* 12 *Vroom* 418. The requirements of an overt act in no way modifies the principle that the confederacy is a single act, and that it may include in its purpose any number of particulars.

Our consideration, therefore, of these and other points urged on behalf of the application leads us to the conclusion that the application must be refused.