THE STATE v. THOMAS McDEVITT ET AL.

Argued June 5, 1912—Decided June 9, 1913.

1. The seventeenth section of the act of June 6th, 1799, relative to the Supreme and Circuit Courts, as amended in 1877, and now appearing as section 4 of the Criminal Procedure act of 1898, vests the justice of the Supreme Court who presides over the Court of Oyer and Terminer in any county with power to appoint an extraordinary term of that court, after the conclusion of the stated term thereof, whenever it shall appear to him that the interests of justice require such action upon his part.

2. The thirtieth section of the act relating to Supreme and Circuit Courts, which authorizes the justice of the Supreme Court who shall hold the Court of Oyer and Terminer in any county, in term time of such court, to order a special term thereof to be held for the trial of any indictment then triable, and remaining untried, does not repeal or modify the fourth section of the Criminal Procedure act of 1898.

3. When an extraordinary term of the Oyer and .Terminer is appointed, after the close of the regular term, the powers of the court, both in the empaneling of a grand jury, and in the trial of indictments presented by that body, are as complete and untrammeled as they are at the regular stated terms of the court.

4. A conspiracy, which has for its purpose the violation of the provisions of section 202 of the act to regulate elections, manifestly perverts and obstructs the administration of that statute, and is indictable under section 37 of the Crimes act.

On error to the Atlantic Oyer and Terminer.

Before GUMMERE, CHIEF JUSTICE, and Justices GARRISON and BERGEN.

For the plaintiffs in error, *Theodore W. Schimpf*.

For the state, *Edmund Wilson*, attorney-general.

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. The defendants were indicted for and convicted of a criminal conspiracy; the specific charge being a corrupt and unlawful combination to pervert and obstruct the due administration of the laws regulating elections by paying moneys to voters to induce them to vote at the general election held in Atlantic City on November 2d, 1909, with intent thereby to corruptly and unlawfully influence the result of that election, and the carrying out of that corrupt and unlawful purpose by aiding and assisting them to cast their votes, and procuring their votes to be received by the election board. The indictment was found at a term of the Court of Oyer and Terminer specially appointed after the close of its regular May term, 1911, by the justice of the Supreme Court then presiding over the courts of Atlantic county; and the grand jury was drawn and summoned by elisors appointed by the court for that purpose, the court having first found that the sheriff of the county was disqualified from performing that service. When the case was brought on for trial counsel for the defendants moved to quash the indictment, first, because

it was not found by a legally constituted grand jury, that body having been illegally drawn and summoned, as was alleged, and second, because it was found at a special term of the court, at which the court had no power to summon and empanel a grand jury.

The ground most strenuously urged for a reversal of the judgment under review is that the indictment is a nullity, having been found by a grand inquest which had no legal existence, because drawn and summoned by elisors whom the court had no power to appoint, instead of by the sheriff, or (if he was in fact disqualified) by one of the coroners of the county. Since the argument of this cause the question presented has been considered and decided by the Court of Errors and Appeals in the case of *State* v. *Zeller,* 54 *Vroom* 666, adversely to the contention of the defendant. That decision, of course, is controlling.

It is further argued that the empaneling of a grand jury at a term specially appointed was without warrant of law, and that the motion to quash the indictment should have prevailed for this reason also. Mr. Attorney-General contends that it is an inherent power residing in the Court of Oyer and Terminer, independent of any statutory enactment, to empanel a special grand jury whenever the exigency of the occasion requires it. We do not find it necessary to consider whether this be so or not, for we think the course pursued in the present case was warranted by the statutory law of the state. The eleventh section of the Criminal Procedure act (*Comp. Stat., p.* 1823) provides that the sheriff of the several counties of the state shall cause to come before the Courts of Oyer and Terminer of their respective counties, "at the times and places of holding said courts twenty-four good and lawful men to serve as grand jurors." The language cited is significant. It provides that grand juries shall be brought before the Courts of Oyer and Terminer, not at the stated terms of those courts only, but at the times of holding said courts. This statutory provision was enacted February 13th, 1819, and will be found in the Revision of 1821, page 658. It has remained upon the statute book in its original form from the time of its passage to the

present day, as will be seen by reference to the revised statutes of 1847, page 221, section 6, and the Revision of 1877, page 273, section 36. The purpose of the legislature in using the words quoted is made apparent by a reference to the seventeenth section of an act relative to the Supreme and Circuit Courts, passed June 6th, 1799, and found in the Revision of 1821, page 455. That section provides "that the Courts of Oyer and Terminer and general gaol delivery shall be held in the respective counties of this state at the times of holding the Circuit Courts in the same, and at any other time that the Chief Justice or one of the justices of the Supreme Court shall think it necessary to appoint on application to him made in writing by the board of chosen freeholders." This statutory provision also has remained a part of the written law of this state without change from the time of its enactment to date, except that in the Revision of 1877, it was transferred to the Criminal Procedure act, and was amended by striking out the last clause thereof, viz., "on application made to him in writing by the board of chosen freeholders of the county." It is now the fourth section of the Revised Criminal Procedure act of 1898. *Comp. Stat., p.* 1821. The first clause of this section provides for the holding of the stated terms of the Oyer; the second clause provides for the holding of additional terms of the court when occasion shall require. The legislature, when it passed the act of February 13th, 1819, and provided thereby that the sheriffs of the respective counties of the state should cause to come before the Courts of Oyer and Terminer of their respective counties at the times and places of holding said courts twenty-four good and lawful men to serve as grand jurors, was aware that by the act of June 6th, 1799, the Court of Oyer and Terminer had power to hold, not only stated terms, but also additional terms when it should appear to the Chief Justice, or one of the justices of the Supreme Court, on the suggestion of the board of freeholders of the county, that the holding of such additional term was necessary, and so it provided that at the times of holding said courts, either at the stated terms thereof, or at extra terms in

case they should be held, the sheriff should summon grand jurors to attend at such terms.

But it is argued by counsel for the defendant that the powers conferred by these statutory provisions have been cut down by the thirtieth section of an act relating to Supreme and Circuit Courts. *Comp. Stat., p.* 1716. That provision is as follows: "The Chief Justice or any justice of the Supreme Court who shall hold any Circuit Court or Court of Oyer and Terminer in a county, whenever in his opinion the ends of justice and the public interest require it, may, in term time of the courts in said county, order a special term of said courts, or either of them, to be held therein for the trial of any cause or indictment then triable and remaining untried, which may require to be tried in either of said courts before the next regular term thereof." This statutory provision was originally enacted on March 4th, 1853, and has remained upon the statute book ever since. It does not purport to repeal, *pro tanto,* either of the earlier provisions which have been herein recited; and that it was not intended to have such an effect is, we think, apparent from the fact that the legislature has continued, in the various revisions which have occurred since 1853, the acts of June 6th, 1799, and of February 13th, 1819. Moreover, the language of the act of March 4th, 1853, is not applicable to an extraordinary term of the Oyer appointed after the end of the regular term. It only applies to special terms ordered by the justice of the Supreme Court who holds the Oyer during the running of the regular term. A special term called under this latter provision is only to be held for the trial of indictments which are triable and remain untried when the special term is ordered. But when an extraordinary term of the court is called after the close of the regular term the powers of the Oyer are as complete and untrammeled, both in the empaneling of a grand jury and the trial of indictments presented by that body, as they are at the regular stated terms of the court.

The motion to quash the indictment upon this ground, therefore, was properly refused.

The application to quash the indictment was rested upon a third ground, namely, that the indictment was "defective and void, in that the agreement charged in it between the defendants to do and accomplish the acts in said indictment set forth does not constitute a conspiracy to pervert and obstruct the due administration of the laws of the State of New Jersey regulating elections." The indictment is drawn under section 37 of the Crimes act. *Comp. Stat., p.* 1757. This section provides that "if any two or more persons shall conspire * * * to commit any act for the perversion or obstruction of justice, or the due administration of the laws, they shall, on conviction, be deemed guilty of a conspiracy," and so forth. In the case of *Moschell* v. *State,* 24 *Vroom* 498, it was declared that "whatever perverts or turns from its true end and purpose the administration of the law regulating elections is within the provisions of this section." Section 202 of the act to regulate elections (*Comp. Stat., p.* 2139) makes it a criminal offence for any person to give any money, or other thing of value, to any voter in order to induce him to vote at any election. A conspiracy which has for its purpose the violation of this provision manifestly perverts and obstructs the due administration of the law regulating elections.

The refusal to quash the indictment upon this ground, therefore, was also proper.

In addition to the assignments of error and reasons for reversal which present the questions already discussed, counsel for the defendants have submitted sixty-eight others which attack rulings of the trial court upon questions of evidence, legal propositions contained in the charge to the jury, and refusal to charge certain requests submitted on behalf of the defendants. No one of these stands out from the others as of sufficient importance to justify its selection for the purpose of discussion; to attempt to discuss each of them is, of course, out of the question. We content ourselves, therefore, with saying that we have given consideration to each one of them, and to the arguments of counsel in support of them, and find none of them meritorious.

The judgment under review will be affirmed.