## THE STATE v. WILLIAM F. KERN ET AL.

1. A public officer who, willfully and with evil intent, disobeys a rule of official duty prescribed by statute, renders himself liable to indictment. *State* v. *Startup,* 10 *Vroom* 423, followed.

2. A public officer having power to contract for the performance of work to be paid for by public money, is under a duty arising out of the

official relation to have the work done on the most advantageous terms. When two persons offer to do such work, of whom one, a responsible bidder, offers to do it on more advantageous terms than the other, that duty requires the officer to award the contract to him; and a charge that the officer willfully and corruptly gave the contract to the other shows a criminal offence.

3. Averments in an indictment of matters which are immaterial and not necessary ingredients in the offence charged may be rejected as surplusage.

4. When a city charter expressly prohibits the making a contract for work without having previously advertised for proposals in a prescribed mode, an award of a contract without such previous advertisement, made willfully and with evil intent, constitutes a criminal offence; but a charge that money was paid for work actually done for the city, without such previous advertisement, and not otherwise showing that the payment was improper, does not disclose a criminal offence.

5. The work of cleaning streets in Jersey City comes within the prohibition of section 159 of the charter, against making a contract for work without previously advertising for proposals.

Motions to quash indictments.

Argued at November Term, 1888, before Justices DEPUE, DIXON and MAGIE.

For the motions, *Vredenburgh & Garretson.*

The opinion of the court was delivered by

MAGIE, J.    Three indictments against defendants, pending in the Hudson Sessions, have been removed to this court by *certiorari*, and a motion to quash each one of them has been made.

The motions present similar questions, and they were argued and have been considered together.

The indictments are distinguished by the numbers 212, 213 and 214.

Indictment No. 212 contains two counts. The first of them avers that defendants were members of the board of public works of Jersey City, and that said board had cognizance and control of the sweeping and cleaning of the streets of said city, and lawful right to advertise for and receive bids

.nd proposals and to contract for such work, and then charges hat defendants unlawfully, willfully, corruptly and with evil ntent, awarded to and entered into a contract with one L. C. for sweeping and cleaning the streets of said city, without previously advertising or giving public notice for bids or proposals therefor.

By section 159 of the "Act to re-organize the local government of Jersey City," approved March 31st, 1871 (*Pamph. L., p.* 1094), it is enacted that no contract for work shall be entered into by or on account of any board of said city, except after due advertisement for six days at least in the official newspapers, and thereupon the contract shall be awarded to that responsible bidder who offers the terms most advantageous to the city.

If the board of public works has been thereby forbidden to make a contract for cleaning streets without the required previous advertisement, the doing of the prohibited act willfully and with evil intent constitutes a criminal offence, and an indictment thus charging the members of the board engaged therein will be sufficient. *State* v. *Startup,* 10 *Vroom* 423.

The contention of defendants is, that the cleaning of streets is not work requiring previous advertisement for proposals, under section 159.

By section 38 of the act above referred to, the board of public works was given power to make contracts in regard to all matters under its control. By the third subdivision of section 39, that board was given cognizance and control of the "opening, extending, altering, regulating, grading, flagging, curbing, guttering, paving, repairing, cleaning, clearing and lighting of streets." By section 55, it is provided that the repairing, clearing and cleaning of streets and sewers and the lighting of streets shall be done under the direction of the board by such person, at such time and in such manner and on such terms as said board shall fix upon.

It is argued that by the provisions of section 55 the cleaning of streets is work which is left to the discretion of the

board, and a contract for which may be awarded without advertisement.

In other sections the act prescribes a variant mode of advertising for proposals for doing some of the work which that board was authorized to do by the third subdivision of section 39, as, for example, the grading and paving of streets. Where such provisions are repugnant to the requirements of section 159, the latter may not be applicable.

Unless there is some necessary repugnancy between the provisions of section 55, in reference to the sort of work covered thereby, and those of section 159, there can be no ground for excluding such work from the provisions of the latter section. I find no such repugnancy. When the board has determined when and how often and in what manner streets are to be cleaned, and has advertised for proposals for such work on terms so fixed, then the acceptance of a proposal and the award of a contract based thereon will entirely satisfy the requirements of both sections.

The work of cleaning streets, therefore, falls within the provisions of section 159, and the board was forbidden to enter into a contract therefor, except after advertisement, in all cases affected by that section. This objection cannot avail defendants.

No other objection was made to this indictment, and the result reached as to the first count renders it unnecessary to examine the other count.

The motion to quash must be denied.

Indictment No. 214 contains a single count. After averring the official character of defendants as members of the board of public works, and the powers of that board, as in indictment No. 212, it charges that the board duly advertised for bids and proposals for cleaning the streets; that two persons bid and offered to do the work, of which persons A, who was a responsible bidder, offered terms and prices most advantageous to the city, but that defendants unlawfully, willfully, corruptly and with evil intent, omitted and neglected to award the contract to him, and unlawfully, willfully, corruptly and

with evil intent, awarded the contract to the other bidder, whereby the city was obliged to pay $5,000 more for the work than would have been required if A's bid had been accepted.

Defendants first object to this indictment upon the same ground on which the motion to quash indictment No. 212 was put. For the reason given in the decision of that motion this objection cannot prevail.

The only other objection to this indictment may be thus stated :

The provisions of section 159, requiring advertisement before entering into contracts, are, by provisos, rendered inapplicable to cases where the amount does not exceed $500, or to repairs, where the safety or protection of public property· or the public convenience requires such advertisement to be dispensed with. By section 53 of a ·supplement approved March 24th, 1873 (*Pamph. L., p.* 400), a further proviso was added, to the effect that if the exigency of any public service should not admit of the required advertisement the work might be done forthwith, provided that the board charged with doing the work should first pass a resolution declaring that such exigency existed, and that the immediate performance of the work, &c., would not admit of the ordinary delay of advertising for proposals, and provided that the board of aldermen should concur therein.

This indictment has evidently been founded on the express command of section 159, that a contract, after advertisement, should be awarded to the responsible bidder whose terms are most advantageous to the city. The pleader has conceived that an indictment so founded must expressly show that the work contracted for was not within any of the exceptions contained in section 159, as amended by section 53 of the supplement. In some cases this is doubtless essential. *State* v. *Startup, ubi supra.*

The indictment, in negativing the exceptions from the statutory requirements, avers that the amount of the contract exceeded $500 ; that there did not exist any exigency of public service not admitting of advertisement as required ; that the

board of public works had not passed the resolution required by section 53 of the supplement, and that the board of aldermen had not concurred therein. But it also avers that the "doing of said work *was* repairs, which the safety or protection or the public convenience required advertisements for doing said work in the official newspapers, for six days at least, to be dispensed with."

It is this affirmative allegation which is supposed to vitiate the indictment.

If necessary, I should hold that this indictment presents a case where the power of amendment, given to the courts by section 53 of the Criminal Procedure act (*Rev.*, p. 277) could properly be exercised. By the terms of that section a very extensive power of amendment, both in matters of form and substance, purports to be given. In view of the constitutional provision that no person shall be held to answer for a criminal offence unless on the presentment or indictment of a grand jury, the legislative grant was broader than it had a right to make. So, in *State* v. *Startup, ubi supra,* it was properly held that an indictment which set out no crime could not be amended so as to charge the crime which it was supposed the grand jury intended to charge. But the legislative enactment on this subject is not, in my judgment, so opposed to the constitutional provision as to be nugatory. Without attempting to indicate all cases in which this power of amendment may be applied, I am of the opinion that it may be held to apply to that class of cases where, on the face of the indictment, a specific criminal charge can be perceived, which fails to be effective only by means of an error, which, looking at the charges and averments of the indictment, the court can clearly infer was a clerical error. Such an error may, in my judgment, be corrected.

If this doctrine could be applied, the inference of a clerical error is irresistible. For it is impossible to suppose that the grand jury intended to charge that cleaning of streets was repairs. The word "not" has evidently been omitted.

But no brief was put in on behalf of the state, and the

point above mentioned was not argued.   It is, besides, quite unnecessary to settle whether or not this error is amendable.

The charges of the indictment show a criminal offence without reference to the express command of the statute.   The duty of every public officer, charged with having public work done to be paid for by public money, is to take care that the work is performed on terms most advantageous to the public.   He will not be liable for mere errors of judgment, but a willful and corrupt awarding of a contract for such work, on terms less advantageous than others offered to do it for, would be a neglect and breach of duty such as to constitute official misbehavior, indictable at common law.   1 *Russ. Cr.* *138.   The statute has neither enlarged nor abridged this rule of the common law.   For it could not be contended that, in the cases exempted from the provisions of section 159 as to advertising, a public officer could, with impunity, willfully and corruptly award contracts for public work on terms less advantageous to the public than those which he could have procured from others.   Such an indictment, therefore, need not negative the cases exempted from the provisions as to advertisements, and averments in respect thereto are immaterial.

Moreover, the original exception to the requirements of section 159 related solely to repairs when certain exigencies existed.   The amendment extended the exception to all exigencies which did not admit of delay of advertising.   But lawful action in all such exigencies was thereby made to depend on (1) a resolution of the board of public works, as specified in section 53 of the supplement, and (2) the concurrence of the board of aldermen.   Whether the exigencies existed or not was immaterial, if the required resolution and concurrence were wanting.

Since the indictment expressly denies the passage of the resolution and the concurrence of the aldermen, the averment as to repairs is immaterial, and not being a necessary ingredient of the offence may be rejected as surplusage.   *Bac. Abr.*, *tit. "Indictment," G* 1.   1 *Whart. Am. Cr. Law*, § 396.

The motion to quash this indictment must be denied.

Indictment No. 213, after preliminary averments such as were contained in the indictments before considered, charges that defendants unlawfully, willfully, corruptly and with evil intent, paid or caused to be paid to W. R. C., for and on account of the sweeping and cleaning of streets in Jersey City, the sum of $12,784 of the money of the city, without having previously advertised or given notice for bids or proposals for such work.

It will be observed that this indictment admits that W. R. C. had done work for which the board could have contracted with him. There is no express denial that a contract for the work was made with him, or that the work was so done by him as to create an obligation on the part of the city to pay him therefor. There is no averment that the work admittedly done was not worth the sum paid.

The offence charged as criminal is the mere payment of public money for work actually done for the public, without having previously advertised for proposals for such work.

But it is quite obvious that the act thus charged to have been done is no breach of official duty, unless some statute has prescribed a rule of duty which has been violated in doing it as charged.

As has been seen, the charter of Jersey City, by section 159, prohibits the award of a contract for such work without previous advertisement for proposals, and the willful disobedience of that prohibition constitutes a criminal offence. But there is no prohibition of the payment of money for such work actually done for the city, when there is no previous advertisement for proposals. This charge, therefore, shows no willful disobedience of any prescribed rule of the charter.

The act of improperly paying out public money may be a breach of the duty arising out of the official relation, and so constitute a criminal offence. But in charging such offence the indictment must show the money to have been improperly paid. Here the only showing of improper action in paying consists in the averment that it was done without previous advertisement for proposals. But that was no breach of a

duty arising out of the official relation in the absence of statutory requirement.

The indictment, therefore, does not show that defendants have committed an indictable offence, and must therefore be quashed.