THE STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. LOUIS KUEHNLE, PLAINTIFF IN ERROR.

Argued June 24, 1913—Decided November 24, 1913.

1. The grand jury sworn at the opening of a Court of Oyer and Terminer was discharged by the court, and a special session of the court convened on motion of the attorney-general. Upon his statement of a *prima facie* case of a criminal violation of law by the sheriff, supported by affidavits, the court ordered a venire to elisors without hearing the sheriff or making public the affidavits. *Held,* that the judge's discretion was properly exercised.

2. Under section 32 of the Crimes act which makes it criminal for certain public officers to be directly or indirectly concerned in any agreement or contract for public improvements, it is necessary that the concern be corrupt. An averment in the indictment that the concern of the defendant was direct is immaterial and may be stricken out as surplusage.

3. Whether in an indictment for a statutory offence, it is necessary to charge and prove a criminal intent is a question of statutory construction.

4. Concern as stockholder in a corporation that makes a contract for a public improvement, may suffice to render a public officer amenable to section 32 of the Crimes act.

5. Where a public officer is concerned in a contract for a public improvement contrary to section 32 of the Crimes act, it is not necessary to constitute the offence denounced by the act that the contract should bind the municipality.

On error to the Supreme Court, whose opinion is reported in 55 *Vroom* 164.

For the state, *Edmund Wilson,* attorney-general.

For the plaintiff in error, *Gilbert Collins* and *Bourgeois & Coulomb.*

The opinion of the court was delivered by

SWAYZE, J. We approve of the opinion of the Supreme Court, but in view of the vigor and earnestness with which counsel for the plaintiff in error pressed upon us points not dealt with by that court, we think it well to add some suggestions.

The right to order a special term of the Atlantic Oyer has been sufficiently vindicated by the Supreme Court in *State* v. *McDevit,* 55 *Vroom* 11.

The right in a proper case to award a *venire* for a grand jury to elisors has been settled by our opinion in *State* v. *Zeller,* 54 *Vroom* 666. The circumstances under which the *venire* issued in the present case are, however, different. In the Zeller case, the sheriff had summoned a grand jury, and the prosecutor of the pleas challenged the array upon the ground that a complaint was to be made against the sheriff;

an opportunity to be heard was given to the sheriff before the challenge was sustained. In the present case the grand jury which had been sworn at the opening of the term was discharged, and the court immediately upon motion of the attorney-general ordered that a special session of the Oyer and Terminer be convened. The attorney-general also moved that the sheriff be disqualified and that the grand jury be selected by two elisors. He stated facts indicating a *prima facie* case of a criminal violation of law by the sheriff, and offered affidavits in support of the charge. The judge then said that sufficient had been shown to convince him that the sheriff was not impartial, but as he doubted his power to pass over the coroners and award a *venire* to elisors, he reserved decision on that point. The affidavits were not made public and no opportunity for a hearing was given to the sheriff. We think that the difference in procedure in the two cases does not differentiate this case from the Zeller case in any essential particular. In both cases the judge acted upon facts that gave reasonable ground to believe that a complaint might properly be made before the grand jury against the sheriff. In neither case did he act in an arbitrary way. Whether or not there should be a public hearing with an opportunity for the sheriff to explain is a matter that must rest in the sound judicial discretion of the judge. He is not to try the case and his only function for the time being is to ascertain whether or not the sheriff is to be trusted to draw an impartial grand jury as his oath of office requires. Cases may arise, and doubtless this was one, where a premature disclosure of the charge to be made might thwart the very purpose of the procedure. The practice of sealing affidavits in such a case is one not to be encouraged as it may lead to abuses. It must always be open to the appellate courts to determine their sufficiency. Here the affidavits show clearly the necessity of the action by the judge and his discretion was properly exercised.

The indictment contains two counts. One charges that Kuehnle was a member of the board of water commissioners of Atlantic City which directly managed and controlled the city water works, and was authorized by law to purchase plant,

materials and supplies therefor, and to expend for that purpose moneys appropriated by the city council; that the commissioners entered into a contract with Lockwood for a water main known as the Timber Water Main; that Lockwood was an employe of the United Paving Company, and that the contract was in fact the contract of the company; that Lockwood was named as a party to conceal the interest of the company, as the defendant knew; that the defendant was a stockholder, director and officer of the United Paving Company, and as such was unlawfully and corruptly interested and directly concerned in the contract. The second count adds an averment that after the execution of the contract, the United Paving Company entered upon the performance thereof, and from time to time received the compensation therefor.

The indictment attempts to charge a violation of section 32 of the Crimes act. *Comp. Stat., p.* 1755. The first count, which is the only one of importance in the pending case, charges a violation of the first part of this section, which forbids the public officers therein mentioned from being directly or indirectly concerned in any agreement or contract for any improvement to be contracted or made for the public use or at the public expense. The language of the statute cannot be taken literally. It is perfectly proper, and in fact commendable, for all citizens and most of all for the officers charged therewith to be concerned in contracts for public improvements; it would be absurd to suppose that the legislature meant to prohibit any concern direct or indirect on the part of those whose public duties required them to be concerned. We must in this, as in all cases, give a reasonable construction to the language, or as is now quite commonly said, apply the rule of reason. Looking at the act in the light of reason, we think it manifest that what the statute meant to prohibit was a selfish concern on the part of the officer adverse to the public, and this concern would, as things go, generally, perhaps always, be a pecuniary concern. But even a pecuniary or selfish concern would not always suffice. Every taxpayer and every owner of real estate has a selfish and pecuniary concern

in the cost of every public improvement and particularly in cases where his property may be liable to assessments for special benefits. Yet it can hardly be that this concern disqualifies every taxpayer and property owner from sitting on municipal boards. There was indeed a time when the law was so strict that a taxpayer was disqualified to sit as a juror in a suit by or against his county or municipality. The absurd rigidity of that rule was abolished by a supplement to "An act the better to promote the impartial administration of justice," in 1849, twenty-six years before the act of 1875, which is the basis of section 32 of the present Crimes act. The supplement probably tended to secure the object declared in its title. We cannot believe that the legislature meant in 1875 to apply a more rigid rule to members of public boards than had been since 1849 applicable to judges and jurors. Reason, we think, requires that the concern should not merely be selfish and pecuniary but corrupt. So indeed the draughtsman of the indictment thought for he averred a corrupt interest and concern, and so the learned trial judge charged. The importance of the point for our present purpose lies in the fact that the indictment avers a direct concern in the contract by Kuehnle, and it is conceded that he had no direct concern; that at most his concern was the indirect concern of a stockholder in the United Paving Company. If the averment of the indictment that he had a direct concern is a material averment, the state utterly failed to prove its case. If, however, the averment is not material, and may be rejected as surplusage, the indictment may still be good if without that averment facts are set forth sufficient if proved to warrant conviction. We think the averment that Kuehnle's concern was direct is immaterial. The statute makes the offence a crime if he is directly or indirectly concerned, which is only a longer way of saying if he is concerned at all. It can make no difference whether the concern is direct or indirect, and the adjectives might well be omitted. There are not two distinct crimes, one based on direct, the other on indirect concern. The crime consists in the corrupt interest whether the concern is direct or indirect. Whether the concern is direct or indirect is a mere conclusion

of the pleader from the facts set forth, and may be rejected (1 *Chit. Crim. L.* \*232), just as other surplusage has been repeatedly rejected where enough remained of the indictment to show a crime. *State* v. *Kern,* 22 *Vroom* 259, 265, at bottom; *State* v. *Brand,* 47 *Id.* 267; *affirmed,* 48 *Id.* 486; *State* v. *Clement,* 51 *Id.* 669. The rule was not questioned in *State* v. *Flynn,* 47 *Id.* 473; in that case the trouble was that the indictment did "no more than to accuse him (the defendant) of one or the other of several matters, one of which is no offence against the law." The material averment in this case is the averment of a corrupt interest. We do not overlook the rule of *Halsted* v. *State,* 12 *Id.* 552. It was held in that case that, with respect to statutory offences, the maxim that crime proceeds only from a criminal mind does not universally apply. But the great Chief Justice who spoke for this court in that case was too acute and accurate to fail to perceive and call attention to the fact that the real question is one of statutory construction. The legislature may if it will make an act criminal without regard to the criminal intent; the question is, has it done so. The construction of the statute in that case turned on the fact that the duty to be performed was a simple one, not subject to very great difficulties in its performance. In the present case the statute, if construed literally and as not requiring a corrupt motive, would lead to results that surely could not have been intended. We think, therefore, that the material averment is the averment that the defendant was corruptly interested and concerned, and that the averment of a direct concern may be disregarded, since the facts specifically set out show a concern as stockholder of the United Paving Company. We see no reason to doubt that such a concern may in a proper case be sufficient to bring the defendant within the statute. The Supreme Court has twice so held. *Stroud* v. *Consumers Water Co.,* 27 *Id.* 422; *Wiesenthal* v. *Atlantic City,* 44 *Id.* 245.

That the owner of a controlling interest in a corporation may often be as much concerned in its contracts as if they were his own, is obvious, and although the interest of the holder of a single share in a great corporation like the United

States Steel Corporation or the Pennsylvania railroad may be so slight as to be imperceptible, no harm can come from holding that he too is concerned within the meaning of the statute, since he cannot be criminally liable unless there is a corrupt intent. Upon the proof of the corrupt intent, the extent of the stockholder's interest becomes important and may be controlling. The proof upon the trial of the present indictment was that the contract in question was between the water commissioners and one Lockwood. Lockwood immediately, with the consent of the water commissioners, assigned ninety-nine one hundredths interest in the contract to William I. Cherry, who was president and general manager of the United Paving Company. The contention of the state was that the contract was in fact the contract of the United Paving Company. It was conceded that the concern of the defendant in order to justify a conviction must be a concern at the time the contract was entered into. It was, therefore, necessary for the state to prove that the contract was from the very beginning the contract of the paving company. There was evidence in the circumstances of the case from which a jury might draw that inference. Where an inference of guilt or of innocence is permissible, it is for the jury to say which inference they will draw, and the result in each man's mind probably depends on the amount of evidence he has accustomed himself to require. We do not agree with counsel for the defendant that the evidence was inconsistent with guilt, nor with the legal proposition that if an inference consistent with innocence was permissible, the jury could not find the defendant guilty beyond a reasonable doubt. That notion is contrary to every day experience and practice. If either one of the two inferences was not permissible, cases could not be submitted as they are to the verdict of a jury to find one way or the other as their conscience and their reason dictate. An individual juror could not indeed find the defendant guilty beyond a reasonable doubt if in his own mind he thought the evidence consistent with innocence; but any twelve men might be convinced of guilt beyond a reasonable doubt, although another twelve might draw the inference of innocence. The important question is which

inference is drawn by the twelve jurors sworn in the cause. In almost every case conflicting inferences are permissible. If it were not so, the province of the jury would be very much curtailed. The judge charged that it was for the state to satisfy the jury beyond a reasonable doubt that what it charges is sustained by a fair inference from the facts only consistent with guilt and not consistent with innocence; and again he charged that although the circumstances might be consistent with the innocence of the defendant, they were not inconsistent with guilt, but that the jury was not to adopt the guilt of the defendant on that account; that they must adopt that which was innocent, but that if they could not reconcile the facts with honest conduct on the part of the defendant, then they might draw the inference, if it led to the single inference of guilt, and they must adopt that. We think this in effect instructed the jury that if they thought the circumstances consistent with innocence, they could not convict. The court was not required to go further.

The defendant urges that there was no sufficient proof that the contract was the contract of the United Paving Company, since there was no action shown by its board of directors. This, however, was not necessary. *Murphy* v. *W. H. & F. W. Cain, Inc.*, 53 *Vroom* 557.

It is also argued very ingeniously that there could have been no contract between the city and the paving company since the very statute under which the defendant is now prosecuted would have rendered any such contract void, and hence no contract at all. *Marley* v. *State*, 29 *Vroom* 207, is relied on. That case involved a consideration of section 31 of the Crimes act forbidding the incurring of an obligation in excess of the appropriation, and it was properly held that no obligation could be imposed upon the county by a violation of law. The argument of the present defendant is based upon the idea that no contract can be made binding upon the municipality by a violation of section 32. The fallacy consists first in assuming that the contract mentioned in section 32 is a contract binding upon the municipality, and second in overlooking the fact that if the express contract was not binding, there was still an

implied contract. If, as the defendant contends, the word "contract" in section 32 must be read as "contract binding the municipality," the enactment of section 32 accomplished nothing since it would be self-destructive. We cannot impute such an intent to the legislature. The word "contract" seems to have been used in the popular sense of a mere agreement rather than in the technical sense of an agreement upon consideration enforceable at law. It is in this sense that it is used even in our law books in such expressions as illegal contracts, void contracts, immoral contracts, contracts in restraint of trade. The word was used in a similar sense in *Wenlink* v. *Freeholders of Passaic*, 37 *Vroom* 65, where the contract was annulled for irregularity, and yet is spoken of as a contract. That case is important also because it sustained a recovery against a municipal corporation upon an implied contract where the express contract is set aside by the court. Section 32 does not necessarily refer to express contracts only.

It is argued that before a corrupt intent can be inferred the state must prove that the defendant intended to violate the statute. This intent seems to us a necessary inference if the acts of the defendant amounted to a violation. He is chargeable with knowledge of the law and with intending to do what in fact he did. Those acts may indeed be done without corrupt intent, but whether they were or not was a jury question. There was evidence from which a corrupt intent might be inferred. The rejection of the lowest bid instead of rejecting all bids, the belief of the defendant that Lockwood was bidding for Cherry, the advice given in advance by the defendant to Cherry not to bid, the assent to an immediate assignment from Lockwood to Cherry of ninety-nine one hundredths of the contract in a writing expressing Lockwood's inability to finance the work, justify an inference that the defendant was consulted in advance and knew that Lockwood made the bid to conceal the real contractor, while his relations through the United Paving Company with Cherry, its president, justify the inference, which the jury must have drawn, that the contract was in fact that of the United Paving Company. Concealment of the real transaction would itself, in

connection with the other circumstances, justify the inference of corrupt intent. And since it was essential to the state's case to prove that the contract was in fact that of the United Paving Company, it was proper to prove the immediate assignment of the contract to its president, and the subsequent connection of the paving company with the performance of the contract including loan of credit and the assignment of moneys due for the extra work. We do not think it material that the defendant did not vote for the contract. His vote was not necessary.. The crime denounced by the statute is not the voting for a contract, but being concerned therein. The failure to vote for it is evidence bearing on the question of corrupt intent, and in the case suggested of the member of a public board voting against a contract, his act would probably, in the ordinary case, be almost conclusive of the absence of corrupt intent; but even in that case, a situation may be conceived where the adverse vote would be a mere sham and cover, if the officer knew that his adverse vote would not change the result.

Certain objections to the charge remain to be considered. The judge told the jury that the facts were not inconsistent with guilt, but that they were not to adopt the guilt of the defendant on that account; that they must adopt that. inference which is innocent; and if they could not reconcile the facts with honest conduct, they might draw the inference if it leads to the single inference of guilt, and they must adopt that. In effect, the judge here said you may infer guilt if you cannot reconcile the circumstances with honest conduct, but you must infer innocence if you can. We find no error in this.

There is perhaps more difficulty in the charge that it was for the jury to say whether the circumstances were such as to convince them beyond a reasonable doubt, that this contract was a *bona fide* contract made by the commissioners with Lockwood or not. Counsel for the defendant argues as if the last two words were not there, and says very properly that it was not for the defendant to prove beyond a reasonable doubt that the contract was a *bona fide* contract with Lockwood, but

for the state to prove that it was in fact the contract of the paving company. A careful reading of the charge shows the error of the criticism. The question here submitted was whether the jury was convinced that it was a *bona fide* contract with Lockwood or not. It must be either one or the other, and it was a *lapsus* to say that either one or the other alternative must be proved, since no proof at all was required of a mere truism. The statement was a mere slip, such as inevitably occurs in oral responses by a judge to requests to charge; it was not a legal proposition. We are unwilling, however, to rest our vindication of the charge upon the mere collocation of the words. If this portion of the charge could have been understood by the jury to require the defendant to prove the *bona fide* character of the contract with Lockwood beyond a reasonable doubt, we should think manifest injury had been done. We have, therefore, examined not only the immediate context but the whole charge with the criticism in mind and we think no juror could have been misled. The judge had just dealt with the defendant's third request to charge, and in accordance therewith had told the jury that there could be no conviction under the indictment if the contract was not that of the United Paving Company taken in the name of Lockwood, and had added that that was the very charge of the state, that the state claimed that was the cheat. He then took up the fourth request to charge that there was no evidence that the contract was as stated in the third request, and therefore the defendant must be acquitted. To this he answered that it was for the jury to say whether there was such evidence and then followed the portion of the charge complained of and recited above. After telling them that it was for them to say whether the circumstances convinced them beyond a reasonable doubt that the contract was a *bona fide* contract or not, he said that if they found it was not, that Lockwood and Cherry were dummies and in the plan and scheme with Kuehnle to hide the true party, they might find the defendant guilty. The effect was to submit to the jury the alternative—*bona fide* contract or not—and immediately to warn them that in order to find the defendant guilty, they

must find that the contract was not *bona fide* and that Lockwood and Cherry were mere dummies. This accords with the rest of the charge. At the very beginning the judge told the jury that in order to convict, the state must establish beyond a reasonable doubt, among other facts, that the contract made by the board of water commissioners with Lockwood was in reality for the benefit of the United Paving Company, and that it, United Paving Company, was the real party who had the beneficial interest in the contract, and that Lockwood or Lockwood and Cherry was or were simply used by the United Paving Company as a blind or cover to conceal the real party in interest, United Paving Company. We are, therefore, of the opinion that the charge was not erroneous.

The court further charged that under the indictment the jury might convict if they found that the state had proven its case beyond a reasonable doubt, and if they found that the defendant was either directly or indirectly concerned in the contract. This was merely stating in an abstract form the possibilities of a verdict under the indictment, just as the court frequently in a homicide case tells the jury that they may under the indictment convict of murder in the first degree, murder in the second degree, or manslaughter. The judge then in response to the request to charge that there was no evidence that the defendant was directly concerned and he must therefore be acquitted, charged that the jury need not find that he was directly concerned but might convict if they found that he was indirectly concerned. Since, as we have already said, the averment of direct concern was immaterial and a mere conclusion of the pleader, since that averment does not charge a crime as distinct from the case where the concern is indirect, and since the facts averred in the indictment amount to a charge of indirect concern, of which facts the jury might find the defendant guilty, it was proper to refuse to direct an acquittal. The judge then told the jury in effect that he did not think the facts made the defendant directly concerned. The result was that the charge was left much in the same shape as a charge in a homicide case, where the judge after speaking of the possibilities of conviction under the in-

dictment for any one of three crimes, adds that the evidence does not justify a finding of manslaughter. The analogy fails only, in the fact that under an ordinary indictment for murder, there may be a conviction of any one of three distinct crimes. But here as in the supposed case the judge qualified his abstract proposition of law when he came to apply it to the facts of the concrete case before him, and as so applied, there was no error.

We think it unnecessary to deal with the suggestions that section 32 of the Crimes act is unconstitutional, and that it does not apply to the water commissioners. It was proper to overrule the offer to prove by Shackelford that there were no transactions that would have made it desirable or necessary to destroy the books of the paving company. At best that would be merely Shackelford's opinion.

The evidence of Boice as to his custom of discharging men employed on the work was properly admitted. It tended in some degree to prove that the contract was being performed by the United Paving Company. We attribute no force to the argument addressed to the remark of the judge as to the probability of Cherry competing with his own company. It makes no difference whether the United Paving Company was or was not engaged in business competing with that of building water mains. They were surely engaged in a business that required the employment of workmen, and if their president engaged in a business that likewise required the employment of workmen in the same locality, they would compete in the labor market. The effect of the judge's remark is unduly magnified in the brief of the plaintiff in error. The other assignments of error we think call for no remark.

The judgment must be affirmed.

MINTURN, J. (dissenting). Upon two grounds, both of which are sufficiently developed in the majority opinion, I rest my dissent.

The case of *State* v. *Zeller*, 54 *Vroom* 666, does not bring the case at bar within the doctrine of *stare decisis*, so as to

command my assent, as I understand the application of the principle.

In that case the sheriff was accorded a trial and was found to be incapacitated. In this case he was not tried and incapacitated by a judgment, and the clisors were appointed without recourse to the coroners, or after any judgment disqualifying the coroners. This differentiating fact suggests the inquiry whether such a judicial prerogative is circumscribed by any limitations. Whether the inalienable guarantees which were supposed to be fundamental in English law, and which were presumed to hedge about the liberty of the citizen with what magna charta and the bill of rights denominated "the law of the land" lose their effectiveness in the presence of arguments *ab inconvenienti* addressed to the court in behalf of the state.

The argument of "the law of the land," says an eminent authority, "was intended as a guaranty against arbitrary proceedings on the part of the king; the enforcement of execution without any judgment, or after a mere pretext of judgment." *Big. Hist. Prac.* 155; 2 *Hale P. C.* 155.

All that we have here is the suggestion of the prosecuting officer, an *ex parte* affidavit, and a judgment thereon that incapacitated the sheriff, discarded the coroners, and brought forth a grand and petit jury, at the hands of a commission in nowise responsible to the people, as were the sheriff and coroners who were thus superseded.

In the light of historical facts the transition of this royal prerogative to the Supreme Bench can be justified only upon the theory that the fundamental maxim upon which it rested has also been transposed to *judex non potest peccare.* I am not prepared to concede the correctness or even the expediency of a doctrine fraught with such dangerous tendencies in an age when the very pillars of the constitution are not immune to unreasoning attack.

The following cases throw light upon the nature of the right of which defendant was deprived and make it manifest that what he was entitled to receive was a trial according to the law of the land, and that a hearing accorded to him upon

any other theory or basis is not a trial recognized by the law. In *Shepherd* v. *State,* 89 *Miss.* 147, the Supreme Court says: "The action of the judge was a manifest violation of the statute in regard to the manner of drawing the grand jury, and if his action can be justified a grand jury may be selected in any manner that a judge may chose, and all the law upon the subject of juries be swept aside. There is no law authorizing the judge to select the grand jury in the manner that he did, but there is a law directing the selection of the grand jury in a different way. If he can change the method in one way he can change it for all and the effect would be to break down all the law on the subject," citing *Stokes* v. *State,* 24 *Id.* 624.

In *Finley* v. *State,* 61 *Ala.* 207, the Supreme Court of Alabama declares that "the exercise of such a power by the court would be in violation of the spirit of all our legislation and would convert the grand jury from a distinct independent body drawn and summoned by officers specially charged with that duty into a mere dependency of the court chosen by its absolute will." In both of these cases the judgments of conviction obtained under such circumstances were reversed and the *ratio decidendi* was that the defendant had not been afforded a trial according to law, which in legal effect was that he received no trial at all, which question was not involved in State *v.* Zeller as I understand the issue determined in that case.

The defendant was convicted under a statute (*Comp. Stat.,* p. 1755) which was intended to prevent a public official, charged with the execution of a public trust, from using the power committed to him for his personal purposes. The language of the act is that if he be "unlawfully interested" or "directly concerned" in any contract or agreement, he becomes guilty upon conviction of a misdemeanor.

To show that the defendant was "unlawfully interested" and "directly concerned" in a contract which as president of a public board he did not vote for, and which was awarded to one Lockwood, and subsequently assigned to the firm of Lockwood & Cherry, the state proved that the defendant was

a stockholder and officer in the United Paving Company, of which Lockwood was superintendent and Cherry was president; that Cherry used the credit and stock in trade of the paving company to further the interests and perform the contract of Lockwood & Cherry. There was no substantive proof that the defendant was a party to or in any way concerned or interested in the work of Lockwood & Cherry.

The inference was permissible, although not necessary, that the paving company was interested and concerned in the firm's contract; but excepting upon the theory that the defendant was the *alter ego* of the paving company, no inference could be reasonably drawn that he was interested or concerned in the firm's contract with the board. One of the most convincing facts in the case that he was not interested and not concerned in the contract, was that he did not vote for it, but refused to vote.

The practical danger inherent in an indictment of that nature, is that the experienced, successful and capable man of affairs, whose service should be sought by the public as a guarantee of intelligent and honest public service, is liable to be estranged from contact with public life by the construction of a statute, which if he be a freeholder in the city, or a stockholder in a bank, endangers his liberty, and casts a stigma upon his rectitude.

Nothing short of active participation at least, with a corrupt motive which must be inferred from proved facts, should warrant the condemnation of a public official under such circumstances as are presented here.

There are cases like *Stroud* v. *Consumers Water Co.*, 27 *Vroom* 423, and *Taylor* v. *Jersey City*, 5 *Id.* 390, where contracts have been invalidated by our courts upon *certiorari* because the evidence showed a personal interest or concern upon the part of the same member of the municipal body, voting for them. These cases are useful as indicating not only a common law, but a legislative policy in dealing with public questions of this nature; but we are not referred to any authority which contains the record of a criminal prosecution of the officials upon whose action those cases were determined.

In that respect this case stands alone as the only specific construction from the standpoint of criminal jurisprudence, put upon a statute which for nearly forty years has maintained its place in substantially its present form upon the books, unenforced as a criminal prohibition.

If defendant's motive was profit to be inferred from circumstances, the proof shows that the firm was a large loser by the contract. If his intent be worth considering it is proved that he failed to vote. Only upon the inference that the firm of Lockwood & Cherry was acting for the paving company, and that the latter company was represented in some manner by the defendant, by reason of his stockholdings, can the verdict be logically supported, under the provisions of this statute; for in no manner was it established that the paving company *eo nomine,* by corporate action or otherwise, was committed to the project so that it might be said that it was "unlawfully interested" or "directly concerned" in the contract.

It becomes manifest, therefore, that to attempt to support the verdict upon inferences that comport to say the least as logically with innocence as they do with guilt, is in essence tantamount to depriving the defendant of the benefit of a reasonable doubt, for to doubt his guilt under such circumstances is in legal effect to declare his innocence. *Dunbar* v. *United States,* 150 *U. S.* 185.

The statute being penal should be strictly construed; and its application to men holding public office should be reasonable in character, otherwise its very existence upon the books, under the construction we now give to it, instead of serving to invite desirable men of affairs into the arena of public life, will serve only to repel them. This practical consideration is important only upon the question of the reasonable construction of the statute, and to my mind, it evinces beyond peradventure, that an interpretation involving such inimical consequences to the welfare of the body politic must have been beyond legislative contemplation. For these reasons the judgment should be reversed and a *venire de novo* awarded.

*For affirmance*—THE CHANCELLOR, SWAYZE, TRENCHARD, PARKER, VREDENBURGH, CONGDON, TERHUNE, HEPPEN-HEIMER, JJ.   8.

*For reversal*—MINTURN, J.   1.