RAFAEL PORRAS ET AL., Plaintiffs and Appellees, v. COUNCIL OF ADMINISTRATION OF SAN JUAN ET AL., Defendants and Appellants.

No. 3505.    Argued March 11, 1927.—Decided February 16, 1928.

J. Guzmán and R. Martínez Nadal for the Council of Administration of San Juan.   Henry G. Molina, Leopoldo Feliú and F. Soto Gras for appellant E. Vidal Sánchez.   Rafael Sancho Bonet for the appellees.

MR. JUSTICE WOLF delivered the opinion of the court.

This was an application for a review by certiorari of the acts of a municipal assembly. In a competition to supply tubes for the new aqueduct in San Juan Enrique Vidal Sánchez was the successful bidder. His contract, which

involved a sum exceeding $960,000, required him to deposit the tubes in the Muñoz Rivera Park. At or before the moment for the performance of the contract the municipal council found that it would be inconvenient to deposit the tubes in the park and more convenient to transport them to the parts of the aqueduct system where they were to be needed. Accordingly, without further competition or offer of competition, the municipal council of San Juan made a new agreement with Enrique Vidal Sánchez to transport the tubes to the places desired. For this transportation the said Enrique Vidal Sánchez was to receive $12 for every ton of tubes conveyed. The additional compensation thus agreed upon amounted to $168,000.

Rafael Porras and Nicasio Quijano were taxpayers within the municipality of San Juan; were also the owners of various trucks and were capable of entering into any competition for transportation, if given the opportunity. They applied for and obtained a writ of certiorari. The District Court of San Juan after a full hearing decided in favor of the petitioners.

On appeal in their assignments of error the appellants say that the additional agreement entered into did not require competitive bidding and that the petitioners are not aggrieved parties within the intendment of the special law of certiorari invoked in this case.

The first assignment of error more specifically is as follows:

"The court had no authority or jurisdiction to annul the attacked contract, because it was not for the construction of any public work or for the purchase of materials."

The principal controversy under this assignment is whether this additional contract or agreement involves a "work" as defined in the statute. This word is mentioned only in section 10 of the Act, but properly to construe its meaning the preceding section should be set forth. The

pertinent parts of sections 9 and 10 of the Municipal Act as amended in 1921, Laws of that year, page 436, read as follows:

"Section 9.—That municipalities shall have full legislative and administrative powers in all matters of a purely local nature and connected with public works, education, charity, public order and security, police, jails, asylums, hospitals, hygiene, the beautifying of the town (*ornato*), street alignment, opening of parks, building regulations, properties and municipal revenues, public roads, water supply, public lighting, sewers, city transportation, cemeteries, markets, slaughter-houses, meatshops, and with all kinds of institutions, services and other activities for the benefit of the municipality in general, and for the development thereof; *Provided,* That such powers shall be exercised subject to such laws of Porto Rico and of the United States as may be in force, and that no ordinance or resolution shall be passed or action taken which in any way conflicts with any of said laws; . . ."

"Section 10.—That the powers hereby conferred on municipalities shall be exercised by them subject to the following special limitations:

"(1) All public works shall be done and all material shall be purchased on call for bids when the cost value thereof exceeds five hundred (500) dollars in municipalities of class one and two hundred (200) dollars in all other municipalities. When materials or supplies are manufactured by only one firm, they may be purchased directly without competition but the ordinance authorizing such purchase shall set forth the reasons therefor. In case of the purchase of supplies or materials which cannot be obtained in the Island of Porto Rico estimates shall be obtained from two or more reputable dealers and the purchase made from such estimates as upon bids. When public call for bids has been made for construction of work or for the furnishing of supplies or materials, and no bids are presented, then the municipality may proceed to construct the work or to purchase such supplies or materials by administration, upon the best terms obtainable. When public calls for bids have been made for construction of work or for the furnishing of supplies or materials, and the bids presented, in the opinion of the municipal council, are exorbitant, then the municipal council may reject all of said bids and proceed to construct the work or to purchase the supplies or materials by administration, upon the best terms obtainable. The amount paid for such work or for such supplies shall in no case

exceed the amount of the lowest bid; *Provided,* That in case of the preparation of plans, estimates and specifications for municipal public works, the municipality may freely contract the services of an engineer or architect, graduate of a school or university of recognized good standing, where the fees to be paid shall not exceed three and one-half (3½) per cent of the amount estimated for the construction of the work . . ."

It is a general principle of law that cities may freely contract for municipal purposes and that any limitation upon their powers must be strictly construed. More particularly if an act specifies that only certain contracts for supplies or the like shall be opened to competitive bidding, the field for competitive bidding will not be extended to other matters not specified. On the other hand a statute requiring competitive bidding is mandatory. Authorities covering this paragraph are as follows: *Kingsley* v. *City of Brooklyn,* 78 N. Y. 213; 28 Cyc. 1025; *Malette* v. *City of Spokane,* 77 Wash. 205, 137 P. 496, 19 R.C.L. 1068, par. 356; note 26 L.R.A. 707; *Chippewa Bridge Co.* v. *Durand,* 122 Wis. 85, 99 N. W. 603, 106 A.S.R. 931; *Santa Cruz Rock Pavement Co.* v. *Broderick,* 113 Cal. 628; *State* v. *Kern,* 51 N.J.L. 259, 17 Atl. 114; and other authorities cited by the court below and in the brief of the appellees.

Section 9 gives municipalities full powers over numerous operations including water supplies. Section 10 then places limitations on their powers. It says "all public works shall be done and material shall be purchased on call for bids," in excess of $500. Section 9 says that "municipalities shall have full legislative and administrative powers in all matters of a purely local nature and connected with public works," etc. Reading these two sections together we have no question that the Legislature intended that every public work and everything connected therewith should be subjected to competitive bidding. The exceptions from competitive bidding, as stated in section 10, tend to point the rule. The transpor-

tation of materials or supplies is necessarily in connection with a public work.

We go further and hold that the transportation of the tubes to form an aqueduct was directly part of the "work" in making the aqueduct. Transportation forms economically a part in the cost of all materials. If a material-man offers to supply materials he takes into account the cost of transportation and so does a builder. As well might bids be opened and the cost of transportation excluded from all and every competitive bidding.

In the testimony of the former mayor he himself said that he was advised that this work could be done for twelve dollars per ton; in other words, that spontaneously he referred to this transportation as a "work."

We agree with the appellees and their citations, moreover, to the effect that mere transportation is a "work."

We are inclined to agree with the court below that this additional agreement was an independent contract.

The appellant was only obliged originally to deposit the tubes in Muñoz Rivera Park. When, therefore, there was a contract made to transport them elsewhere as needed, it was independent of the intention originally manifested by the parties, especially if the law be regarded. If the municipality had asked for bids to deposit the tubes where needed and thus contemplated a heavier outlay of money, different persons might have entered the competition, attracted by larger possibilities. We feel bound to hold that this contract for transportation fell strictly within the statute requiring competitive bidding.

The second assignment of error is as follows:

"The court had no jurisdiction to annul the said contract in a certiorari proceeding."

If the theory in this case was that the petitioners were merely possible competitive bidders, we should be inclined to agree with the appellant that their interest was too

remote and that they were not aggrieved parties as defined in section 65 of the Municipal Act as follows:

"(d) To grant, by ordinary suit, compensation for damages, to parties injured by acts or omissions of municipal officials through malice or inexcusable negligence or ignorance." (Laws 1919, p. 722.)

Petitioners, however, were also taxpayers whose burden of taxation might be increased by an inappropriate award of a contract. They showed very clearly that the work might have been more cheaply done and this was directly admitted in the testimony of the former mayor, although he said that he was informed about it after the contract was signed. It matters not at all that in the opinion of various experts the offer of the appellant was considered reasonable. By a long experience legislatures have determined that competitive bidding is the efficient way. The authorities are substantially uniform that taxpayers in a community have a sufficient interest to apply for relief.

The appellant insists that injunction was the proper remedy. We hold that under section 65 of the Municipal Law the intention of the Legislature was to give persons a remedy by certiorari who otherwise might have had relief by injunction. As we have decided several times, the former law of certiorari may be looked at for some purposes, but the remedy now given by the Legislature is not so limited as was the classical certiorari. The idea of the Legislature was to advance the remedy and suppress the mischief.

We find nothing in the case of *Berríos* v. *Municipal Assembly of Yabucoa*, 30 P.R.R. 382, that militates against the considerations of this opinion.

The provisions of section 10 were practically universal and mandatory and the judgment of the district court should be affirmed.

This was a case in which the Council of Administration of San Juan also appealed. The appellees moved for a

dismissal on the grounds that the said council has filed neither a transcript of the record nor a brief. The transcript of the record filed in this case was a general one approved by the judge below and the whole record is before us and is applicable indifferently to all the appellants. The said council filed no brief, it is true, yet it appeared at the hearing. As all questions raised have been decided in favor of the appellees, a general affirmance will cover everything, and it it so ordered.

Mr. Justice Texidor took no part in the decision of this case.