Rafael Porras y Nicasio Quijano, demandantes y apelados, v. El Concejo de Administración de San Juan, P. R., compuesto por Don Rafael Diez de Andino, Com. de Servicio Público, Policía y Prisiones, Don R. Benítez Castaño, Com. de Hacienda, Don Francisco Márquez, Com. de Obras Públicas; Don José González Ginorio,

Com. de INSTRUCCIÓN PÚBLICA y Don VÍCTOR GUTIÉRREZ
ORTIZ, Com. de BENEFICENCIA; y Don ENRIQUE VIDAL
SÁNCHEZ, demandados y apelantes.

No. 3505.—*Visto:* Marzo 11, 1927. *Resuelto:* Febrero 16, 1928.

1. CORPORACIONES MUNICIPALES—MEJORAS PÚBLICAS — CONTRATOS — VALIDEZ DE
   LOS MISMOS—CONTRATOS SUJETOS A SUBASTA—CONTRATOS O CONVENIOS ADI-
   CIONALES SOBRE OBRAS.—Adjudicado un contrato de suministro de tubos para
   un acueducto, que proveía el depósito de éstos en determinado sitio, un con-
   trato o convenio adicional para la transportación de dichos tubos a los sitios
   del sistema de acueducto en que fueren necesarios, cayendo estrictamente
   dentro del estatuto que exige una subasta, la no celebración de ésta hace
   nulo dicho convenio adicional.
2. CORPORACIONES MUNICIPALES—MEJORAS PÚBLICAS—CONTRATOS—EJECUCIÓN DE
   OBRAS PÚBLICAS—ADICIONES AL CONTRATO ORIGINAL DE UNA OBRA—EN GE-
   NERAL.—De acuerdo con la Ley Municipal, al disponer ésta que toda *obra*
   se verifique mediante subasta, la transportación de los tubos para construir
   un acueducto forma parte directa de la *obra* del acueducto.
3. CERTIORARI—PERSONAS CON DERECHO A REVISIÓN POR CERTIORARI—INTERÉS DEL
   PETICIONARIO.—Concedido indebidamente un contrato por un municipio—so-
   bre transportación de tubos para la construcción de un acueducto sin haber
   mediado subasta para ello—un contribuyente tiene suficiente interés para
   solicitar un remedio a fin de anular el mismo.
4. CERTIORARI—PERSONAS CON DERECHO A REVISIÓN POR CERTIORARI—EN GENE-
   RAL.—De acuerdo con el artículo 65 de la Ley Municipal de 1919 (pág. 721)
   la intención del legislador fué conceder el remedio de *certiorari* a algunas
   personas que de otro modo pudieran haberse valido del recurso de *injunction*.

SENTENCIA de *Charles E. Foote,* J. (San Juan, Primer Distrito), de-
  clarando ilegal, nulo e ineficaz acuerdo del Concejo de Adminis-
  tración de San Juan, en cuanto a una adición al contrato origi-
  nal de suministro y transporte de tubería e ilegal, nulo e ineficaz
  el contrato que a tal fin se suscribió. *Confirmada.*

J. *Guzmán* y *R. Martínez Nadal,* abogados del *Concejo de Adminis-
  tración* de San Juan; *Henry G. Molina, Leopoldo Feliú* y *F.
  Soto Gras,* abogados del apelante E. Vidal Sánchez; *Rafael San-
  cho Bonet,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR WOLF, emitió la opinión del tri-
  bunal.

Se trata de una petición para revisar, mediante *certiorari,*
las actuaciones de una asamblea municipal. En una su-
basta para suministrar los tubos del nuevo acueducto al
Municipio de San Juan, se le adjudicó la buena pro a En-
rique Vidal Sánchez. De acuerdo con el contrato, que en-

volvía una suma mayor de $960,000, él tenía que depositar los tubos en los terrenos del Parque Muñoz Rivera. Al cumplirse el contrato o antes, la Asamblea Municipal halló que no era conveniente depositar los tubos en el Parque y que era mejor transportarlos a los sitios del sistema de acueducto en que fueren necesarios. En consecuencia, y sin subasta alguna ni oferta de subasta, la Asamblea Municipal de San Juan hizo un nuevo convenio con Enrique Vidal Sánchez para transportar los tubos a los sitios deseados. Por efectuar esta transportación, Enrique Vidal Sánchez recibiría doce dólares por cada tonelada de tubos transportados. La compensación adicional así convenida ascendía a la suma de $168,000.

Rafael Porras y Nicasio Quijano eran contribuyentes residentes en el municipio de San Juan; también eran dueños de varios camiones, y estaban en condiciones de hacer ofertas en la subasta para transportar los tubos si se les hubiese dado la oportunidad para ello. Solicitaron y obtutuvieron un auto de *certiorari*. La Corte de Distrito de San Juan, después de una extensa vista, resolvió el caso a favor de los peticionarios.

En el señalamiento de errores radicado en apelación, los apelantes alegan que el convenio adicional celebrado no exigía una subasta y que los peticionarios no son una parte perjudicada dentro del significado de la ley especial de *certiorari* invocada en este caso.

[1, 2] El primer señalamiento de error más específicamente dice así:

"La corte no tuvo poder o jurisdicción para anular el contrato impugnado, porque no era para verificar ninguna obra pública ni adquisición de materiales."

La controversia principal bajo este señalamiento es si este contrato o convenio adicional envuelve una "obra" según esa palabra está definida por el estatuto. Este término sólo está mencionado en el artículo 10 de la ley, pero

para interpretar debidamente su significado debe considerarse el artículo precedente.    La parte pertinente de los artículos 9 y 10 de la Ley Municipal, según fué enmendada en 1921, Leyes de ese año, página 436, leen como sigue:

"Art. 9.—Los municipios tendrán plenas facultades legislativas y administrativas en todo asunto que fuere de naturaleza puramente local y que se relacionen con los ramos de obras, instrucción, beneficencia, orden y seguridad públicos, policía, cárceles, asilos, hospitales, higiene, ornato, alineación de calles, apertura de parques, reglamentación de construcciones, propiedades y rentas municipales, vías públicas, suministro de agua, alumbrado público, alcantarillado, transportes urbanos, cementerios, mercados, mataderos, carnicerías y toda clase de instituciones, servicios y otras actividades en beneficio de la municipalidad en general y para el fomento de éstas; *Disponiéndose,* que estas facultades se ejercitarán sujetas a las leyes de Puerto Rico y de los Estados Unidos que estuvieren en vigor, y que no podrá adoptarse ninguna ordenanza, resolución ni acuerdo que en modo alguno viole ninguna de dichas leyes; . . . .

"Art. 10.—Las facultades conferidas por esta Ley a los municipios se ejercitarán por éstos con sujeción a las siguientes limitaciones especiales: (1) toda obra pública se verificará y todo material se adquirirá mediante subasta cuando su valor o costo exceda de quinientos (500) dólares, en los municipios de primera clase y de doscientos (200) dólares, en los demás; cuando los efectos o materiales se fabricaren por una sola firma, podrán comprarse directamente, sin competencia, pero en la ordenanza autorizando tales compras se deberán hacer constar los motivos.    En el caso de tener que adquirir los efectos o materiales que no puedan conseguirse en la Isla de Puerto Rico, se obtendrán precios de dos o más traficantes acreditados, y se efectuarán las compras en vista de tales precios, de igual modo que si se hiciere una subasta.    Cuando se hubiere anunciado una subasta para la construcción de una obra o para el suministro de efectos o materiales, y no se presentaren proposiciones, entonces el municipio podrá hacer la obra o adquirir los efectos o materiales por administración, bajo las condiciones más ventajosas posibles.    Cuando se hubiere anunciado una subasta, para la ejecución de una obra o para el suministro de efectos o materiales, y las proposiciones presentadas fueren exorbitantes a juicio del concejo de administración, entonces podrá éste rechazarlas todas, y proceder a ejecutar la obra o la adquisición de efectos o materiales por administración, en las mejores condiciones posibles.    La suma pagada

por dicha obra o por dichos materiales en ningún caso deberá exceder del montante de la proposición más baja; *Disponiéndose,* que tratándose de la confección de planos, presupuestos, y especificaciones de obras públicas municipales el municipio podrá contratar libremente los servicios de un ingeniero o arquitecto graduado de una escuela o universidad de reconocida reputación, siempre que los honorarios que hayan de pagarse no excedieren del tres y medio (3½) por ciento de la cantidad presupuesta para la construcción de la obra; . . . .''

Es un principio general de jurisprudencia que los municipios pueden contratar libremente para fines municipales, y que cualquier limitación de sus poderes debe ser interpretada estrictamente. Mas en particular, si una ley especifica que solamente ciertos contratos para materiales o algo parecido estarán sujetos a subasta, el campo de licitación no será extendido a otras materias no especificadas en la ley. Por otra parte, una ley que exija subastas es imperativa. Algunas autoridades referentes a lo dicho en este párrafo son las siguientes: *Kingsley* v. *City of Brooklyn,* 78 N. Y. 200, 213; 28 Cyc. 1025; *Malette* v. *City of Spokane,* 77 Wash. 205, 137 P. 496, 19 R.C.L. 1068 par. 356; nota 26 L.R.A. 707; *Chippewa Bridge Co.* v. *Durand,* 122 Wis. 85, 99 N. W. 603, 106 A.S.R. 931; *Santa Cruz Rock Pavement Co.* v. *Broderick,* 113 Cal. 628; *State* v. *Kern,* 51 N.J.L. 259, 17 Atl. 114; y otras autoridades citadas por la corte inferior y en el alegato de los apelados.

El artículo 9 concede a los municipios amplios poderes sobre numerosas operaciones, incluyendo el suministro de agua. El artículo 10 fija entonces las limitaciones de esos poderes. Este artículo dice que ''toda obra pública se verificará y todo material se adquirirá mediante subasta,'' cuando el valor sea mayor de quinientos dólares. El artículo 9 dispone que ''los municipios tendrán plenas facultades legislativas y administrativas en todo asunto que fuere de naturaleza puramente local y que se relacione con los ramos de obras públicas,'' etc. Al leer estos dos artículos conjuntamente, no tenemos duda de que la intención de la Legislatura fué

que toda obra pública y todo lo relacionado con las mismas estuviesen sujetos a subasta. Las excepciones de lo que no está sujeto a subasta, según están fijadas en el artículo 10, tienden a indicar la regla. La transportación de materiales necesariamente está relacionada con una obra pública.

Vamos aún más lejos, y resolvemos que la transportación de los tubos para construir un acueducto formaba parte directa de la "obra" del acueducto. Económicamente, el transporte forma parte del costo de los materiales. Si una persona que se dedica a la venta de materiales ofrece suministrarlos, toma en consideración el costo del transporte, y así lo hace también un contratista. De ese modo, podrían abrirse las proposiciones y excluirse el costo de transportación de todas y cada una de las licitaciones en competencia.

En su declaración el alcalde anterior admitió que a él se le había dicho que esta obra podía hacerse a razón de doce dólares por tonelada, en otras palabras, él se refería espontáneamente a esta clase de transportación como una "obra."

Convenimos con los apelados y además con sus citas al efecto de que la mera transportación es una "obra."

Nos inclinamos a estar de acuerdo con la corte inferior en que el convenio adicional era un contrato independiente.

El apelante Vidal originalmente sólo estaba obligado a depositar los tubos en el Parque Muñoz Rivera. Por tanto, cuando se efectuó el contrato para transportarlos adonde fueran necesitados, ello era independiente de la intención manifestada originalmente por las partes, especialmente si se toma en consideración la ley. Si el municipio hubiese solicitado que se le hicieran proposiciones para depositar los tubos en los sitios donde fueren necesitados, teniendo así en mente un desembolso mayor de dinero, distintas personas tal vez hubiesen hecho proposiciones, atraídas por mejores posibilidades. Nos sentimos obligados a resolver que el contrato sobre la transportación caía estrictamente dentro del estatuto que exigía una subasta.

[3] El segundo señalamiento de error dice así:

"La corte no tuvo jurisdicción para anular el contrato en cuestión mediante el procedimiento de *certiorari.*"

Si la teoría de este caso fuera que los peticionarios eran meramente posibles licitadores, estaríamos inclinados a convenir con los apelantes en que el interés de ellos sería demasiado remoto y que no serían perjudicados, según define dicha palabra el artículo 65 de la Ley Municipal, que dice:

"(d) Para conceder, mediante juicio ordinario, compensación de daños y perjuicios a los perjudicados por actos u omisiones de los funcionarios municipales, por malicia, negligencia o ignorancia inexcusables."

Sin embargo, los peticionarios eran, además, contribuyentes cuya contribución podía ser aumentada por una concesión indebida de un contrato. Ellos demostraron muy claramente que el trabajo pudo haberse hecho a un precio más bajo, y este extremo fué directamente admitido por la declaración del alcalde anterior, aunque él dijo que lo supo después de firmar el contrato. No importa en absoluto que en opinión de varios peritos la oferta de los apelantes fuera considerada razonable. Según una larga experiencia ha demostrado, las legislaturas han determinado que la subasta es el método más eficiente. Las autoridades están substancialmente de acuerdo en el sentido de que los contribuyentes de una comunidad tienen suficiente interés para solicitar un remedio.

[4] Los apelantes insisten en que el recurso de *injunction* era el remedio adecuado. Resolvemos que, de acuerdo con el artículo 65 de la Ley Municipal, la intención de la Legislatura fué conceder el remedio de *certiorari* a las personas que de otro modo pudieran haberse valido del recurso de *injunction.* Según hemos resuelto en distintas ocasiones la ley anterior de *certiorari* puede ser consultada para algunos fines, pero el remedio concedido ahora por la Legislatura no es tan limitado como lo era el *certiorari* clásico. La idea de la Legislatura fué extender el remedio y suprimir

el mal.   Nada hallamos en el caso de *Berríos* v. *Asamblea Municipal de Yabucoa,* 30 D.P.R. 414, que esté en contra de los fundamentos de esta opinión.

Las disposiciones del artículo 10 son prácticamente uniformes e imperativas, y *debe confirmarse la sentencia de la corte de distrito.*

En este caso también apeló el Concejo de Administración de San Juan.   Los apelados solicitaron la desestimación de la apelación fundándose en que dicho Concejo no había radicado ni la transcripción de los autos ni alegato.   La transcripción de la evidencia radicada en este caso era una general, aprobada por el juez de la corte inferior, y tenemos los autos completos a la vista y son aplicables indistintamente a ambos apelantes.   Aunque es cierto que dicho Concejo no radicó alegato, sin embargo, compareció a la vista. Como todas las cuestiones levantadas han sido resueltas a favor de los apelados, *una confirmación general cubrirá todo y así se ordena.*

El Juez Asociado Señor Texidor no intervino.